1

2  **POMERANTZ LLP**
   Jeremy A. Lieberman (pro hac vice)
3  Austin P. Van (pro hac vice)
   600 Third Avenue, 20th Floor
4  New York, NY 10016
   Telephone: (212) 661-1100
5  jalieberman@pomlaw.com
   avan@pomlaw.com

6  Jennifer Pafiti (SBN 282790)
   1100 Glendon Avenue, 15th Floor
7  Los Angeles, California 90024
   Telephone: (310) 405-7190
8  jpafiti@pomlaw.com

9  *Counsel for Plaintiffs*

10 *—Additional Counsel on Signature Page —*

11              **UNITED STATES DISTRICT COURT**
                **NORTHERN DISTRICT OF CALIFORNIA**
12

13 DR. FERN MARGOLIS, MAYER            CASE NO.  5:23-CV-03882-PCP
   MARGOLIS, JUAN PADILLA, ZEV
14 LEWINSON, EDUARDO ARANIBAR,         **OPPOSITION TO DEFENDANT'S MOTION**
   ELIZABETH GUIDICE, EARL             **TO DISMISS THE CLASS ACTION**
15 MCFARLAND, GLENNIS PARKER, and      **COMPLAINT**
   SHAUN BIDDISCOMBE, Individually and
16 On Behalf of All Others Similarly Situated,   Date:      February 1, 2024
                                        Time:      10:00 AM
17              Plaintiffs,             Location:  Courtroom 8 - 4th Floor
                                        Judge:     Hon. P. Casey Pitts
18     v.

19 APPLE INC.,

20              Defendant.

21

22

23

24

25

26

27

28

**TABLE OF CONTENTS**

I.  INTRODUCTION ........................................................................................ 1

II.  FACTUAL BACKGROUND ..................................................................... 3

    A.  Apple Intentionally Impaired iPhone 7 Devices with iOS 15 and Misled Users About that Impairment ..................................................... 3

    B.  Plaintiffs Suffered Damages from iOS 15's Undisclosed Performance Impairments ...................................................................................... 5

III.  LEGAL STANDARDS ............................................................................ 5

IV.  PLAINTIFFS HAVE ADEQUATELY PLEADED MULTIPLE COMPUTER-INTRUSION CLAIMS .............................................................................. 5

    A.  The Complaint Adequately Pleads that the Damage iOS 15 Caused to iPhone 7 Devices Was Caused Without Authorization ......................... 6

    B.  The Complaint Adequately Pleads that Apple Intentionally and Knowingly Caused Impairments to Plaintiffs' iPhone 7 Devices ............. 9

        1.  For Plaintiffs' CFAA and Trespass Claims, the Complaint Adequately Pleads that Apple Intentionally Caused Impairments to Plaintiffs' iPhone 7 Devices ................................................... 9

        2.  For Plaintiffs' CDAFA Claim, the Complaint Adequately Pleads that Apple Knowingly Caused Impairments to Plaintiffs' iPhone 7 Devices .. 12

    C.  For Plaintiffs' CFAA Claim, the Complaint Pleads Required Losses ................. 13

    D.  For Plaintiffs' Trespass to Chattels Claim, the Complaint Adequately Pleads that iOS 15 Caused Legally Cognizable Impairment ................................... 14

    E.  Plaintiffs' Trespass to Chattels Claim Is Not Barred by the Economic Loss Rule 16

V.  THE COMPLAINT ADEQUATELY PLEADS VIOLATIONS OF STATE CONSUMER PROTECTION LAWS ............................................................... 17

    A.  Defendant Violated State Consumer Protection Laws by Omitting To Inform Consumers that Installation of iOS 15 Would Damage iPhone 7 Devices ........... 17

        1.  The Complaint Adequately Pleads Reliance ............................................. 17

        2.  The Complaint Adequately Pleads Duty To Disclose ............................... 19

        3.  Apple's Software License Was Affirmatively Misleading ........................ 21

    B.  Defendant Violated California's UCL and FAL .................................................. 21

        1.  Defendant Violated the UCL by Violating the "Unlawful" Prong .......... 22

2.      Defendant Violated the UCL by Violating the "Fraudulent" Prong.........22

3.      Defendant Violated the FAL.................................................................23

4.      The Court May Award Injunctive Relief under the UCL and FAL..........23

VI.     CONCLUSION.................................................................................................25

1

**TABLE OF ABBREVIATIONS**

2

| | |
|---|---|
| **Apple or Company** | Apple Inc. |
| **CFAA** | Computer Fraud and Abuse Act, 18 U.S.C. § 1030, *et seq.* |
| **CDAFA** | California's Comprehensive Computer Data Access and Fraud Act, Cal. Penal Code § 502 |
| **Complaint** | Class Action Complaint (August 2, 2023) (ECF No. 1) |
| **Computer-Intrusion Claims** | Plaintiffs' CFAA, CDAFA and trespass to chattels claims |
| **Defendant** | Apple Inc. |
| **FAL** | California's False Advertising Law, Cal. Bus. & Prof. Code, § 17500, *et seq.* |
| **iOS 15** | Apple's mobile operating system for iPhone, version 15 *et seq.* |
| **iPhone 7 Device(s)** | Apple's iPhone 7 and iPhone 7 Plus computing devices |
| **Motion or Def.'s Mem.** | Defendant's Notice of Motion and Motion to Dismiss Complaint; Memorandum of Points and Authorities in Support (October 13, 2023) (ECF No. 36) |
| **Plaintiffs** | Dr. Fern Margolis, Mayer Margolis, Juan Padilla, Zev Lewinson, Eduardo Aranibar, Elizabeth Guidice, Earl McFarland, Glennis Parker, and Shaun Biddiscombe |
| **SLA** | Apple's Software License Agreement for iOS |
| **UCL** | California Unfair Competition Law, Cal. Bus. & Prof. Code, § 17200, *et seq.* |

1

2

**TABLE OF AUTHORITIES**

3

**Page(s)**

4

**Cases**

5

*Brodsky v. Apple Inc.*,
   2019 WL 4141936 (N.D. Cal. Aug. 30, 2019) ...............................................................6, 7, 8

6

*Butera & Andrews v. Int'l Bus. Machines Corp.*,
   456 F. Supp. 2d 104 (D.D.C. 2006) ...............................................................................11

7

8

*Cahen v. Toyota Motor Corp.*,
   717 F. App'x 720 (9th Cir. 2017) ......................................................................................23

9

10

*Cappello v. Walmart Inc.*,
   394 F. Supp. 3d 1015 (N.D. Cal. 2019) ............................................................................22

11

*City of High Point, North Carolina v. Suez Treatment Solutions, Inc.*,
   485 F. Supp. 3d 608 (M.D.N.C. 2020) ..............................................................................19

12

13

*COR Sec. Holdings Inc v. Banc of California, N.A.*,
   2018 WL 4860032 (C.D. Cal. Feb. 12, 2018).....................................................................11

14

*Cor Secs. Holdings v. Bank of California*,
   2018 U.S. Dist. LEXIS 237262 (C.D. Cal. Feb. 12, 2018)..................................................10

15

16

*Craig Frazier Design, Inc. v. Zimmerman Agency LLC*,
   2010 WL 3790656 (N.D. Cal. Sep. 27, 2010) ......................................................................5

17

18

*Dana v. Hershey Co.*,
   180 F. Supp. 3d 652 (N.D. Cal. 2016) .................................................................................19

19

20

*Daniel v. Ford Motor Co.*,
   806 F.3d 1217 (9th Cir. 2015) ......................................................................................18, 23

21

22

*Davidson v. Kimberly-Clark Corp.*,
   889 F.3d 956 (9th Cir. 2018) .......................................................................................24, 25

23

*eBay, Inc. v. Bidder's Edge, Inc.*,
   100 F. Supp. 2d 1058 (N.D. Cal. 2000) ........................................................................6, 15

24

25

*Falk v. Gen. Motors Corp.*,
   496 F. Supp. 2d 1088 (N.D. Cal. 2007) ..............................................................................20

26

27

*Fields v. Wise Media, LLC*,
   2013 WL 5340490 (N.D. Cal. Sept. 24, 2013) ....................................................................15

28

*Gold v. Lumber Liquidators, Inc.*,
   2015 WL 7888906 (N.D. Cal. Nov. 30, 2015) ...................................................................20

*Hitachi Credit Am. Corp. v. Signet Bank*,
   166 F.3d 614 (4th Cir.1999) ...................................................................................................19

*Hodsdon v. Mars*,
   162 F. Supp. 3d 1016 (N.D. Cal. 2016) .................................................................................19

*Hodsdon v. Mars, Inc.*,
   891 F.3d 857 (9th Cir. 2018) .................................................................................................20

*In re Alphabet, Inc.*,
   1 F.4th 687 (9th Cir. 2021) ................................................................................................9, 21

*In re Apple & AT & TM Antitrust Litig.*,
   596 F. Supp. 2d 1288 (N.D. Cal. 2008) .............................................................................8, 13

*In re Apple & ATTM Antitrust Litig.*,
   2010 WL 3521965 (N.D. Cal. July 8, 2010), *vacated in part sub nom. In re*
   *Apple & AT & TM Antitrust Litig.*, 826 F. Supp. 2d 1168 (N.D. Cal. 2011)...........................8

*In re Apple Inc. Device Performance Litig.*,
   347 F. Supp. 3d 434 (N.D. Cal. 2018) ...................................................................... *passim*

*In re Atossa Genetics Inc. Sec. Litig.*,
   868 F.3d 784 (9th Cir. 2017) ...................................................................................................5

*In re Facebook, Inc. Sec. Litig.*,
   2023 WL 6857600 (9th Cir. Oct. 18, 2023)........................................................................9, 21

*In re First Alliance Mortg. Co.*,
   471 F.3d 977 (9th Cir. 2006) ...............................................................................1, 20, 22, 23

*In re Gilead Scis. Sec. Litig.*,
   536 F.3d 1049 (9th Cir. 2008) .................................................................................................5

*In re iPhone Application Litig.*,
   2011 WL 4403963 (N.D. Cal. Sept. 20, 2011) ...................................................................8, 13

*In re iPhone Application Litigation*,
   844 F. Supp. 2d 1040 (N.D. Cal. 2021) .................................................................................15

*In re: Lenovo Adware Litig.*,
   2016 WL 6277245 (N.D. Cal. Oct. 27, 2016)....................................................................15, 16

*In re Sony PS3 Other OS Litig.*,
   828 F. Supp. 2d 1125, 1129 (N.D. Cal. 2011), *aff'd in part, rev'd in part*, 551
   F. App'x 916 (9th Cir. 2014) ...................................................................................................8

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*In re Tobacco II Cases*,
    46 Cal. 4th 298, 207 P.3d 20 (2009) .....................................................................18

*In re Toys R Us, Inc., Privacy Litig.*,
    2001 WL 34517252 (N.D. Cal. Oct. 9, 2001)..........................................................13

*Kwikset Corp. v. Superior Court*,
    51 Cal. 4th 310, 246 P.3d 877 (2011) ....................................................................22

*Lerner v. Fleet Bank, N.A.*,
    459 F.3d 273 (2d Cir. 2006)....................................................................................11

*LiMandri v. Judkins*,
    52 Cal.App.4th 326, 60 Cal.Rptr.2d 539 (1997).....................................................20

*Patriot Sci. Corp. v. Korodi*,
    504 F. Supp. 2d 952 (S.D. Cal. 2007) .....................................................................17

*Robinson Helicopter Co., Inc. v. Dana Corp.*,
    34 Cal. 4th 979, 22 Cal. Rptr. 3d 352, 102 P.3d 268 (2004) ..................................16

*San Miguel v. HP Inc.*,
    317 F. Supp. 3d 1075 (N.D. Cal. 2018) ..................................................................15

*Sonner v. Premier Nutrition Corp.*,
    971 F.3d 834 (9th Cir. 2020) ..................................................................................24

*United States v. Grupe*,
    2018 U.S. Dist. LEXIS 21434 (D. Minn. Feb. 8, 2018) ..........................................11

*United States v. Technodyne LLC*,
    753 F.3d 368 (2d Cir. 2014)....................................................................................12

*Williams v. Apple Inc.*,
    2017 WL 10186313 (E.D.N.Y. Nov. 1, 2017)...................................................9, 21

**Statutes**

18 U.S.C. § 1030......................................................................................... *passim*

Cal. Bus. & Prof. Code § 17200 ...............................................................17, 22

Cal. Bus. & Prof. Code § 17500 ...........................................................17, 22, 23

Cal. Penal Code § 502............................................................................... *passim*

La. Rev. Stat. An. §§  51:1401 ..............................................................................17

N.C. Gen. Stat. Ann. §§ 75-1.1 ..........................................................................17, 18

N.Y. Gen. Bus. Law § 349 ..................................................................................................17, 18

N.Y. Gen. Bus. Law § 350 ..................................................................................................17, 18

Va. Code Ann. §§ 59.1-196 ................................................................................................17, 18

## I.    INTRODUCTION

Apple is among the most profitable companies in the world, and the lion's share of its profits come from selling iPhones.  Yet given that Apple has largely saturated the domestic market for iPhones by selling these devices to many of its target consumers, Apple can only continue to profit from these consumers if they decide they need to replace the iPhone they already have.  Accordingly, without exaggeration, Apple has one of the most compelling profit motives of any company ever to convince iPhone users that they need to replace their phones.  This profit motive appears to have compelled Apple to violate federal and state laws by tricking iPhone users, in particular iPhone 7 users, to install an update to their iPhone operating system, iOS 15, that irreversibly degraded iPhone 7's performance to such a degree that the devices became, at a minimum annoying and frustrating to use, and at worst, functionally inoperable for certain tasks.  This trick is illegal.  Apple intentionally *declined to inform* iPhone 7 users that installing iOS 15 on their phones would seriously impair them, so Apple caused this impairment without the informed consent of iPhone 7 users.  This conduct violated federal and state laws governing computer intrusion, and state consumer protection laws prohibiting deceptive business practices.  Plaintiffs seek both compensation for the damage caused to their devices and a sensible injunction requiring Apple to provide clear notice of such damage with future iOS updates to prevent this chronic conduct from recurring.

*First*, Apple violated federal and state computer-intrusion laws because Apple accessed iPhone 7 computers and caused damage to those devices that the iPhone 7 users never authorized.  Defendant argues that Apple cannot be liable because Plaintiffs authorized the installation of iOS 15 on their iPhone 7 Devices, but Apple conflates Plaintiffs' authorization for the installation, which they granted, with Plaintiffs' authorization for Apple to cause permanent damage to their iPhones, which Plaintiffs certainly did not grant.  Case law makes this distinction clear and imposes liability where, as here, Plaintiffs did not authorize such damage.  Defendant also argues that Apple could not have intended iOS 15 to impair Plaintiffs' devices because iOS 15 included certain security updates and additional features.  Yet the Complaint clearly alleges facts supporting the plausible inference that Apple intended iOS 15 to impair iPhone 7 Devices:  Apple knew from its

extensive pre-launch testing that iOS 15 would impair iPhone 7 devices, and Apple had an immense profit motive to cause such impairment.  Whether Apple also intended with iOS 15 to provide security updates and additional features is irrelevant because the law requires only that one of Apple's motives have been to bog down iPhone 7 Devices and induce their users to buy new phones.  Defendant's narrower arguments also fail.  The Complaint effortlessly clears the $5,000 loss threshold under the CFAA because courts in this District consistently hold, contrary to Defendant's argument, that damages from the putative class may be aggregated in cases like this one, and aggregate damages in this case amount to many millions of dollars.  Similarly, the courts that have considered technical impairments like those at issue in this case have all found that such impairments constitute sufficient interference to state a claim under California trespass law.  Defendant's invocation of the economic loss rule has no application here, where no contract has anything to do with this case.

*Second*, Apple violated state consumer protection laws by omitting from its notices accompanying the installation of iOS 15 that the installation on iPhone 7 Devices would damage them.  Apple argues that the Complaint fails to plead that Plaintiffs relied on the omitted information, but in fact, the Complaint pleads that Plaintiffs would have seen the information had it been included in the notices all installers view, and that they would not have installed iOS 15 if they had been informed that the installation would irreparably damage their Devices.  Apple also argues that it had no duty to disclose that iOS 15 would impair iPhone 7 devices, but the Complaint pleads multiple grounds for such a duty:  Apple had exclusive knowledge from its pre-launch testing that iOS would cause impairment, Apple actively concealed this material impairment from Plaintiffs by refusing to make any effort to notify them after discovering the impairment, and Apple's statements to consumers, including in the iOS 15 license itself, were misleading for failure to disclose the impairment.  This Court has jurisdiction to grant equitable relief, including injunctive relief, under state laws (in addition to federal laws) because monetary compensation alone is inadequate to prevent Apple's recurring violations that it has a powerful incentive to continue.

1    Indeed, this District Court has seen this same conduct from Apple before.  In *In re Apple*

2    *Device Performance Litigation*, Judge Davila considered Apple's motion to dismiss a complaint

3    alleging the same sorts of claims at issue here with respect to an earlier iPhone, and rejected most

4    of the same arguments from Apple that Apple makes again here.  The Court should follow Judge

5    Davila's well-reasoned opinion and deny Defendant's Motion.

6    **II.      FACTUAL BACKGROUND**

7    **A.      Apple Intentionally Impaired iPhone 7 Devices with iOS 15 and Misled Users**

8    **About that Impairment**

9    Apple released the iPhone 7 and iPhone 7 Plus (the "iPhone 7 Devices") in

10   September 2016.  Compl. ¶ 37.  iPhone 7 Devices use Apple's iOS operating system.  Every year,

11   Apple releases a new major version of iOS with its newest iPhone models.  Compl. ¶¶ 31-36.  In

12   September 2021, Apple released iOS 15 for iPhone 7 Devices.  Compl. ¶ 45.  Apple heavily

13   promoted iOS 15 in its marketing materials and urged iPhone 7 Device owners to download the

14   update.  Compl. ¶¶ 47-57.

15   Contrary to Apple's promotions of iOS 15, the update significantly degraded the

16   performance of iPhone 7 Devices.  Compl. ¶¶ 58-71.  iOS 15 caused the devices to run more

17   slowly, to glitch, to crash, to take longer to power on, to overheat, and to have poor battery life

18   compared to prior iOS versions.  *Id.*  Plaintiffs experienced these problems on their own iPhone 7

19   Devices after installing iOS 15.  Compl. ¶¶ 21-29.  Independent testing confirmed declines of up

20   to 114% in the speed and performance of basic operations when running iOS 15 compared to iOS

21   14 on iPhone 7 Devices.  Compl. ¶¶ 61-68.

22   Apple never warned users that iOS 15 would negatively impact iPhone 7 Devices.  Compl.

23   ¶¶ 47-57.  Instead, Apple continued promoting iOS 15 as improving iPhone 7 Devices, stating it

24   was "compatible" and had "powerful new features that enhance how you use iPhone."  Compl.

25   ¶¶ 13, 33, 47-57.  iOS 15 was the last iOS version made available for iPhone 7 Devices.  Compl.

26   ¶ 45.  When issues emerged, Apple never admitted iOS 15 degraded performance, but kept urging

27   users to update for supposed benefits.  Compl. ¶¶ 68-71, 80-87.

28

Apple was well aware that installation of iOS 15 on iPhone 7 Devices would cause significant performance degradation from Apple's extensive pre-launch testing of iOS 15 on these devices. Compl. ¶ 106.  The performance decline in iPhone 7 Devices was largely caused by those devices' technological limitations compared to newer models.  Compl. ¶¶ 72-88.  Each year, Apple adds more advanced processors and features to new iPhones, then designs the latest iOS update specifically for the newest models' capabilities.  *Id.*  When the iPhone 7 Devices were first released in September 2016, they contained Apple's A10 Fusion chip and ran on iOS 10.  Compl. ¶¶ 37-40, 43.  Over the next several years, Apple released newer and more advanced iPhone models containing newer, more powerful chips.  Compl. ¶¶ 72-79.  By September 2021 when Apple released iOS 15, the newest iPhone model was the iPhone 13 with the A15 Bionic chip.  Compl. ¶ 77.  iOS 15 was designed in a way that was specifically tailored for the more advanced capabilities of newer iPhones like the iPhone 13.  Compl. ¶¶ 72, 78.  Because of the gap between the older iPhone 7 Devices and the newer iPhones, iOS 15 demanded more performance than the iPhone 7 Devices were capable of providing, which led to the performance degradation Plaintiffs experienced.  Compl. ¶¶ 7-9, 81-83.

iPhones are expensive.  The price of a new iPhone 7 ranged from $649 to $849, and the price of a new iPhone 7 Plus ranged from $769 to $969.  Compl. ¶ 38.  The latest model of iPhone as of the date of the Complaint cost at least $800, and some versions cost well over $1,000.  Compl. ¶¶ 2, 36.  Because iOS updates are free, Apple's revenue and profits are dependent on customers' purchasing expensive new iPhones.

Apple urged users to download iOS 15 for free, yet omitted the fact that iOS 15 degraded older devices' performance, including the performance of iPhone 7 Devices.  Compl. ¶ 33.  Apple's concealment of the problems caused by the installation of iOS 15 on iPhone 7 Devices allowed Apple to profit from users' purchasing new models when their old iPhones stopped working.  Compl. ¶¶ 89-91.

OPPOSITION TO DEFENDANT'S MOTION TO DISMISS (CASE NO. 5:23-CV-03882-PCP)

**B.**      **Plaintiffs Suffered Damages from iOS 15's Undisclosed Performance Impairments**

Plaintiffs suffered significant harm from the installation of iOS 15 on their iPhone 7 Devices.  Compl. ¶ 91.  Plaintiffs lost value in their iPhones, wasted time dealing with performance problems, lost use and enjoyment of normal device functioning, and felt compelled to spend money on new iPhones or battery replacements.  *Id.*  Some Plaintiffs are forced to continue using their sluggish iPhone 7 Devices because they cannot afford to purchase Apple's pricey new models.  Compl. ¶ 29.  Plaintiffs would not have updated to iOS 15 if Apple had disclosed the performance impairments.  Compl. ¶ 15.  Apple's omissions deprived Plaintiffs of making informed decisions about installing iOS 15.  *Id.*

## III.   LEGAL STANDARDS

On a 12(b)(6) motion, the court "accept[s] the Plaintiffs' allegations as true and construe[s] them in the light most favorable to Plaintiffs."  *In re Atossa Genetics Inc. Sec. Litig.*, 868 F.3d 784, 793 (9th Cir. 2017) (citation omitted).  "[T]he purpose of a 12(b)(6) motion to dismiss is to test the sufficiency of the complaint, not to decide its merits."  *Craig Frazier Design, Inc. v. Zimmerman Agency LLC*, No. 10-CV-1094 (SBA), 2010 WL 3790656, at *6 (N.D. Cal. Sept. 27, 2010).  A Rule 12(b)(6) motion is "viewed with disfavor." *McDougal v. County of Imperial*, 942 F.2d 668, 676 n.7 (9th Cir. 1991) (citation omitted).  The complaint need only state "enough facts to state a claim to relief that is plausible on its face."  *Cousins v. Lockyer*, 568 F.3d 1063, 1067-68 (9th Cir. 2009) (citation omitted).  "[S]o long as the plaintiff alleges facts to support a theory that is not facially implausible, [any] skepticism is best reserved for later stages of the proceedings when the plaintiff's case can be rejected on evidentiary grounds."  *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1057 (9th Cir. 2008).

## IV.    PLAINTIFFS HAVE ADEQUATELY PLEADED MULTIPLE COMPUTER-INTRUSION CLAIMS

By convincing iPhone 7 users to install iOS 15 without telling them that doing so would cause irreversible damage to their phone, Apple violated the Computer Fraud and Abuse Act ("CFAA") and the California's Comprehensive Computer Data Access and Fraud Act

("CDAFA"), and committed common law trespass to chattels (together, the "Computer-Intrusion Claims"). Apple does not dispute that the Complaint adequately pleads the majority of the elements of each of these causes of action. Rather, Defendant contests only the following elements of these claims: (1) that the damage at issue in all three claims occurred "without authorization" or "without permission"; (2) that Apple intentionally or knowingly caused the damage underlying all three claims; (3) for the CFAA claim, that Plaintiffs meet the CFAA loss requirements; and (4) for the trespass to chattels claim, that the iPhone 7 Devices were damaged. Def.'s Mem. at 6-12. The Complaint adequately pleads each of these elements.

### A.   The Complaint Adequately Pleads that the Damage iOS 15 Caused to iPhone 7 Devices Was Caused Without Authorization

The Computer-Intrusion Claims each require that Plaintiffs did not authorize Apple to damage their iPhone 7 Devices when they installed iOS 15. The CFAA claim requires that Apple "knowingly cause[d] the transmission of a program . . . and as a result of such conduct, intentionally *cause[d] damage, without authorization*."[1] 18 U.S.C. § 1030(a)(5)(A) (emphasis added). The CDAFA claims similarly require that Apple "knowingly accesse[d] and *without permission . . . damage[d]* . . . any data, computer software, or computer programs," or "knowingly and *without permission disrupt[ed]* . . . computer services," Cal. Penal Code § 502(c)(4)-(5) (emphasis added). Plaintiffs' trespass to chattels claim likewise requires that Apple "intentionally and *without authorization interfered* with plaintiff's possessory interest in the computer system." *eBay, Inc. v. Bidder's Edge, Inc.*, 100 F. Supp. 2d 1058, 1069–70 (N.D. Cal. 2000) (emphasis added). Notably, authorization to install a software program is not authorization for that program to cause damage—where a "software update notification . . . ma[kes] [no] mention of [damage]," "even [if] Plaintiffs voluntarily installed the iOS updates, they never gave permission for Apple to cause damage to their iPhones." *In re Apple Inc. Device Performance Litig.*, 347 F. Supp. 3d 434, 452 (N.D. Cal. 2018), *on reconsideration in part*, 386 F. Supp. 3d 1155 (N.D. Cal. 2019); *see Brodsky v. Apple Inc.*, No. 19-CV-00712-LHK, 2019 WL 4141936, at

---

[1] Under the CFAA, "damage" is defined as "any impairment to the integrity or availability of data, a program, a system, or information." 18 U.S.C. § 1030(e)(8).

*4 (N.D. Cal. Aug. 30, 2019).  Indeed, any other rule would cripple a central purpose of the CFAA and CDAFA statutes—to thwart computer hacking:  if a users' voluntary installation of software alone precluded liability for damage from that software, the CFAA and CDAFA statutes would be toothless against much computer hacking, as computer hacking schemes commonly require victims to download misleadingly described software that, unbeknownst to the user, contains computer viruses or other forms of malware.

Plaintiffs plainly did not authorize Apple to damage their iPhone 7 Devices when they installed iOS 15.  The Complaint describes in detail each of the notices that accompanied Apple's iOS 15 software update, Compl. ¶¶ 33-35, 49-57, and makes clear that "[n]one of these statements . . . stated in any way that the update would make iPhone 7 Devices perform worse than they did on any prior version of iOS," *id*. ¶ 55.  Accordingly, Plaintiffs never gave permission for Apple to cause damage to their iPhone 7 Devices.  *See In re Apple Inc. Device Performance Litig*., 347 F. Supp. 3d at 452; *see Brodsky*, 2019 WL 4141936, at *4 (agreeing that where a software update "failed to identify additional [damaging] effects of the software update," "plaintiffs did not consent to those additional effects of the software update").

Apple has previously litigated this precise issue in this District with respect to a previous version of iPhone and a previous software update to iOS.  In *In re Apple Inc. Device Performance Litigation*, Judge Davila distinguished between provisions requiring *access* without authorization, and provisions like those at issue in this case requiring *damage* without authorization.  *See* 347 F. Supp. 3d at 454-55.  Judge Davila then found that "the [c]omplaint's allegations that the iOS updates slowed processor speeds in [p]laintiffs' iPhones readily fit" the definition of "damage" under the CFAA, and that "neither the software update notification nor the software update release notes made any mention" of the severe slowing.  *Id*.  Judge Davila concluded that "[i]n this way, even though [p]laintiffs voluntarily installed the iOS updates, they never gave permission for Apple to cause damage to their iPhones."  *Id*.  This Court should reach the same conclusion.

Apple argues that Plaintiffs authorized the installation of iOS 15 on their iPhone 7 Devices and therefore authorized the damage that resulted from those installations.  Def.'s Mem. at 7.  As explained above, in this District, authorization for an installation does not constitute authorization

for resulting damage of which the plaintiffs had no notice, *see In re Apple Inc. Device Performance Litig.*, 347 F. Supp. 3d at 452, and the contrary rule Defendant proposes would gut a central purpose of the CFAA and CDAFA.  Defendant cites a few cases to argue that software cannot cause damage without authorization where a user voluntarily downloads the software, Def.'s Mem. at 7-8, but not one of those cases stands for that proposition.  In each of those cases, the defendants *had informed the plaintiffs* of the damage that would result from the installation at issue prior to the installation (or later gave them notice and the option to undo the installation), so the damage in those cases, unlike here, was plausibly authorized.  In *In re Sony PS3 Other OS Litigation*, defendant Sony informed users that installation of a firmware update would disable access to the PlayStation Network to improve security of the console—that is why the choice for users was "a difficult one*.*"  *See* 828 F. Supp. 2d 1125, 1129 (N.D. Cal. 2011), *aff'd in part, rev'd in part*, 551 F. App'x 916 (9th Cir. 2014).  Indeed, unlike here, "plaintiffs ma[d]e no claim that Sony failed to disclose that the update would disable" PSN access.  *Id. at* 1132.  Similarly, in *Brodsky*, where the court found that users had voluntarily permitted the installation of two-factor authentication ("2FA") in downloading an iOS update, plaintiffs had alleged that defendant Apple sent "an email to the user that explain[ed] that the user c[ould] disable 2FA" within two weeks of the installation, and no allegations suggested that the notices users received with the software updates did not warn them that the updates would enable 2FA.[2]  *Brodsky*, 2019 WL 4141936, at \*1.  Apple quotes from *In re Apple & AT & TM Antitrust Litig.*, Def.'s Mem. at 7-8, but in that case, Apple expressly warned iPhone users that installing iOS 1.1.1 on an iPhone that had been modified in violation of the license terms "w[ould] likely result in the modified iPhone becoming permanently inoperable." 596 F. Supp. 2d 1288, 1296 (N.D. Cal. 2008); *see In re Apple & AT & TM Antitrust Litig.*, No. C07-05152 JW, 2010 WL 3521965, at \*7 (N.D. Cal. July 8, 2010), *vacated in part*, 826 F. Supp. 2d 1168 (N.D. Cal. 2011).

---

[2] Defendant also cites *In re iPhone Application Litig.*, Def.'s Mem. at 8, but that case addressed only whether the defendant had "accessed a protected computer" "without authorization" under § 1030(a)(4).  *In re iPhone Application Litig.*, No. 11-MD-02250-LHK, 2011 WL 4403963, at \*11 (N.D. Cal. Sept. 20, 2011).  The Court did not consider whether defendants had caused "damage without authorization" under § 1030(a)(5)(A)(i), the provision at issue here.  *Id.*

1    Apple attempts to argue that it warned Plaintiffs in the Software License Agreement

2 ("SLA") for iOS 15 that installation of iOS 15 "may affect the availability and usability of third-

3 party software, applications, or third party services, as well as Apple products and services," and

4 stated that Apple did not warrant that operation of the software would be "uninterrupted or error-

5 free," so according to Apple, Plaintiffs were therefore on notice of the damage caused by the

6 installation of iOS 15.  Def.'s Mem. at 8-9.  Certainly not.  As one court addressing nearly identical

7 language in Apple's SLA has held, "by this Court's reading, a reasonable consumer could find that

8 the agreement does not disclose that the iOS [] software would (or could) render their iPhone

9 [devices] inoperable." *Williams v. Apple Inc*., No. 15 CV 07381 (SJ), 2017 WL 10186313, at *3

10 (E.D.N.Y. Nov. 1, 2017).  The court in *Williams* was correct, for multiple reasons.  As an initial

11 matter, the statement that iOS 15 may "affect" the usability of software applications did not

12 indicate that any such potential effect would be damaging, and the statement that Apple did not

13 warrant that iOS 15 would be error-free did not put Plaintiffs on notice that installation of iOS 15

14 would in fact impair iPhone 7 Devices.  Moreover, as explained below, *infra* Part V, both

15 statements affirmatively misled users to believe that Apple had no reason to think, at the time they

16 installed iOS 15, that iOS 15 would impair iPhone 7 Devices because these statements described

17 such impairment as merely hypothetical when in fact Apple knew such impairment would occur.

18 *See In re Facebook, Inc. Sec. Litig.*, 84 F.4th 844, 860 (9th Cir. 2023) (citing *Berson v. Applied*

19 *Signal Tech*., 527 F.3d 982, 987 (9th Cir. 2008); *In re Alphabet, Inc.*, 1 F.4th 687, 702-05 (9th Cir.

20 2021)).  Accordingly, the SLA, far from warning consumers of impairments, affirmatively misled

21 them to believe that Apple had no knowledge that such impairments would occur.

22    **B.    The Complaint Adequately Pleads that Apple Intentionally and Knowingly**

23 **Caused Impairments to Plaintiffs' iPhone 7 Devices**

24    **1.    For Plaintiffs' CFAA and Trespass Claims, the Complaint Adequately**

25 **Pleads that Apple Intentionally Caused Impairments to Plaintiffs'**

26 **iPhone 7 Devices**

27    Plaintiffs' CFAA claim requires that Defendant have "knowingly cause[d] the transmission

28 of a program, . . . and as a result of such conduct, *intentionally cause[d] damage* without

9

authorization, to a protected computer."  18 U.S.C. § 1030(a)(5)(a) (emphasis added).  Plaintiffs' trespass to chattels claims similarly requires that Defendant "intentionally . . . interfered with Plaintiffs' possessory interest in the[ir] computer system."  *In re Apple Inc. Device Performance Litig.*, 347 F. Supp. 3d at 455 (quoting *eBay*, 100 F. Supp. 2d at 1069-70).

The Complaint straightforwardly pleads that "Apple intentionally caused damages without authorization to Plaintiffs' iPhone 7 Devices."  Compl. ¶ 106.  The Complaint likewise pleads ample facts supporting the plausible inference that Apple intended for the iOS 15 updates to impair older iPhone models, including iPhone 7 Devices.  The Complaint alleges that Apple had a powerful profit motive to release iOS software updates that impair the performance of older devices to encourage users of older models to purchase new devices.  The Complaint alleges that Apple's development of new iOS updates "induce[s] customers to continue to purchase newer devices," so "Apple's ability to earn the magnitude of revenue and profits that it does is . . . tightly tied to its continual release of" iOS updates.  Compl. ¶ 21.  The Complaint likewise alleges that Apple knew that the release of iOS 15 would impair the function of iPhone 7 Devices by alleging, among other things, that Apple extensively tested iOS 15 on the Devices and did not recommend iOS 15 for all iPhones.  Compl. ¶¶ 16, 106.  Factfinders may reasonably infer that because Apple knew that iOS 15 would impair the function of iPhone 7 Devices, and because Apple had a powerful motive to release updates to iOS that impaired the performance of older devices, Apple plausibly intended iOS 15 to impair the function of older devices, including iPhone 7 Devices.  *See, e.g.*, *Cor Sec. Holdings v. Bank of Cal.*, No. CV 17-1403-DOC, 2018 U.S. Dist. LEXIS 237262, at *16 (C.D. Cal. Feb. 12, 2018) (mere allegations of knowledge, including that "employees never had access to every workspace in the [a]ccount, knew the [a]ccount was never in their name, and knew [their employer] was never authorized to access workspaces containing Plaintiffs' information" were sufficient to allege intentional conduct under the CFAA); *United States v. Grupe*, No. 17-CR-0090(1), 2018 U.S. Dist. LEXIS 21434, at *12 (D. Minn. Feb. 8, 2018) (evidence found sufficient to support intentional conduct under the CFAA where there was "ample evidence that [defendant] . . . had a motive to harm [the computer system]").  Allegations that Apple had a powerful motive for the iOS 15 to impair the function of older devices strongly support

1   the plausible inference that Apple intended that impairment.  *See COR Sec. Holdings Inc v. Banc*

2   *of Cal.*, No. SA CV 17-1403-DOC, 2018 WL 4860032, at *7 (C.D. Cal. Feb. 12, 2018) (finding

3   that because plaintiffs' allegations of intent "include context, motive, opportunity, and a history of

4   similar behavior, they plausibly state a claim under the CDAFA" as well); *Butera & Andrews v.*

5   *Int'l Bus. Machines Corp.*, 456 F. Supp. 2d 104, 109–10 (D.D.C. 2006) ("[I]t is more reasonable

6   to conclude that an act is intentional for the purpose of the [CFAA] when it serves a party's self-

7   interest to engage in such conduct.") (citation and internal quotation marks omitted); *Lerner v.*

8   *Fleet Bank, N.A.*, 459 F.3d 273, 290–91 (2d Cir. 2006) (finding a strong inference of fraudulent

9   intent "may be established . . . by alleging facts to show that defendants had both motive and

10  opportunity to commit fraud").

11       Apple argues that the Complaint's allegations somehow "show that [Plaintiffs] cannot

12  satisfy the mental state requirements" for their CFAA and trespass to chattels claims.  Apple argues

13  first that the Complaint does not formally allege that Apple "intended to degrade iPhone 7

14  performance," Def.'s Mem. at 10, but Apple is simply wrong:  the Complaint alleges that "Apple

15  intentionally caused damages . . . to Plaintiffs' iPhone 7 Devices," and alleges specific facts

16  supporting that inference, including knowledge and motive.  Compl. ¶¶ 21, 106.

17       Defendant next argues that Plaintiffs "acknowledge that the alleged performance

18  degradation may have been an unintended consequence" of iOS 15 installations.  Def.'s Mem. at

19  10.  In fact, as explained above, the Complaint pleads a straightforward factual basis supporting

20  the inference that Apple desired performance degradation from iOS updates—Apple's enormous

21  profits depend on such continuous performance degradation.  *See* Compl. ¶¶ 14, 36, 80, 90.  The

22  Complaint acknowledges that Apple may have released updates for additional reasons, including

23  adding features, but that Apple may have intended the updates to make non-detrimental changes

24  to certain devices does not show that Apple did not also intend iOS 15 to degrade the performance

25  of iPhone 7 Devices to induce users to buy new phones.  It is well established that the element of

26  intent may be satisfied even where the defendant has multiple purposes.  *See United States v.*

27  *Banks*, 506 F.3d 756, 766 (9th Cir. 2007) (because "[p]eople often act with mixed motives" and

28  nothing in the text of the statute suggested the required intent must be the defendant's "sole" or

"primary" purpose, it was not necessary to "prove that this motive was the sole purpose, or even primary purpose of the Defendant"), *amended*, 514 F.3d 959 (9th Cir. 2008); *United States v. Technodyne LLC*, 753 F.3d 368, 385 (2d Cir. 2014) ("[i]t is commonplace that the law recognizes that there may be multiple motives for human behavior; thus, a specific intent need not be the actor's sole, or even primary, purpose" and "when Congress has meant to impose a sole-intent limitation, it has done so expressly").

Finally, Apple appears to argue that the Complaint alleges that it acted merely negligently in causing harm to iPhone 7 Devices.  Def.'s Mem. at 10.  No such allegation appears in the Complaint.  The statement in the Complaint that Apple knew iOS 15 would cause performance degradations "regardless of whether Apple" had "nefarious intent" or was "simply aware that this would happen," simply alleges that, *at a minimum*, Apple acted knowingly in damaging iPhone 7 Devices—this statement in no way disclaims the clear allegations of the Complaint that "Apple intentionally caused damages . . . to Plaintiffs' iPhone 7 Devices," or the allegations of motive that support that inference.  Compl. ¶ 106.

### 2. For Plaintiffs' CDAFA Claim, the Complaint Adequately Pleads that Apple Knowingly Caused Impairments to Plaintiffs' iPhone 7 Devices

In contrast to Plaintiffs' CFAA and trespass to chattels claim, Plaintiffs' CDAFA claim requires only that Apple acted "knowingly" in damaging or disrupting iPhone 7 Devices. Cal. Penal Code § 502(c)(4)-(5).  As explained above, the Complaint pleads that Apple not only acted knowingly, but also acted intentionally given Apple's powerful profit motives for causing such impairments.  That the Complaint adequately alleges that Apple acted knowingly in causing damage to iPhone 7 Devices also should not be in dispute.  The Complaint alleges that "Apple extensively tests each of its updates prior to releasing it to the public," and specifically that Apple "tests extensively all updates to measure the impact they have on device performance."  Compl. ¶ 106.  When the tests show unacceptable performance, "at a certain point in time, Apple stops making new iOS versions available for prior iPhone models."  Compl. ¶ 35.  The obvious inference from these facts is that Apple was well aware of the impact of iOS 15 on iPhone 7 Devices. Defendant argues that the Complaint fails to allege that "pre-launch testing actually revealed

1  issues," Def.'s Mem. at 11, but the Complaint alleges that iOS 15 significantly degraded the

2  performance of all iPhone 7 Devices, Compl. ¶¶ 58-71 (explaining how third-party testing and

3  other sources showed material degradation in performance), so the inference that Apple testing

4  revealed the same degradation all other third-party testing found, rather than somehow missing it,

5  is inescapable.

### C.    For Plaintiffs' CFAA Claim, the Complaint Pleads Required Losses

7       The CFAA requires that plaintiffs bringing a civil action for violation of 18 U.S.C. § 1030

8  plead one of the factors in subsection (c)(4)(A)(i)(I)-(V).  The Complaint meets this requirement

9  by pleading the factor in (c)(4)(A)(i)(I), namely "loss to 1 or more persons during any 1-year period

10  . . . aggregating at least $5,000 in value."  Courts in this District consistently hold that this

11  requirement may be satisfied by aggregating the damages of all putative class members, as long

12  as, like here, "those damages arose from the same act by a defendant."  *So v. HP, Inc.*, No. 22-cv-

13  02327-BLF, 2023 U.S. Dist. LEXIS 122864, at *32 (N.D. Cal. July 17, 2023) (citation omitted);

14  *see, e.g.*, *In re iPhone Application Litig.*, No. 11-MD-02250-LHK, 2011 WL 4403963, at *11

15  (N.D. Cal. Sept. 20, 2011) ("A plaintiff may aggregate individual damages over the putative class

16  to meet the [CFAA] damages threshold if the violation can be described as 'one act'"); *In re Apple*

17  *& AT&T Antitrust Litig.*, 596 F. Supp. 2d 1288, 1307-08 (N.D. Cal. 2008) (citation omitted)

18  (similar); *In re Toys R Us, Inc., Privacy Litig.*, No. 00-cv-2746, 2001 WL 34517252, at *11 (N.D.

19  Cal. Oct. 9, 2001) (similar).

20       Here, the Complaint plausibly alleges that the damage caused to the putative class of

21  millions of iPhone 7 users by the installation of iOS 15 amounted in aggregate to damages of vastly

22  more than $5,000 in value.  The Complaint alleges that the price of iPhone 7 Devices ranged from

23  $649 to $849 and that the price of iPhone 7 Plus ranged from $769 to $969.  Compl. ¶ 38.  The

24  Complaint also alleges that the proposed Class includes "hundreds of thousands or millions of

25  class members."  iPhone 7 is "an important means of communication and a critical tool that

26  Apple's customers rely on for basic daily needs," Compl. ¶ 139, and as explained in detail below,

27  iPhone 7 users experienced "significant problems" after installing iOS 15, including "regular[]

28  crashes," instances where the "screen goes blank," Compl. ¶ 21, "getting stuck . . . and requiring

1    a reboot," loss of battery performance "requir[ing] a recharge every few hours, Compl. ¶ 22, and

2    overall "substantial slowdowns" in basic operations, including timed slowdowns ranging from

3    114% to 29%, Compl. ¶¶ 62-63.   Assuming conservatively that the putative class contains one

4    million members, even if the performance impairments caused by the installation of iOS 15 on

5    iPhone 7 caused only $0.005 damage to each class members' device, the Complaint plausibly

6    alleges that the loss requirement of the CFAA is satisfied.   In truth, the damage caused to iPhone

7    7 by the installation of iOS 15 plausibly rendered these expensive devices valueless or very nearly

8    valueless, and would have encouraged many users to discard their phones and to purchase a new

9    device.   Given that each of the nine named Plaintiffs in this Action spent at least $649 to purchase

10   their iPhone, Compl. ¶ 38 (and would have to spend at least $800 to buy a new device (Compl.

11   ¶ 2)), the Complaint plausibly alleges that the loss requirement of the CFAA is satisfied even by

12   the named Plaintiffs alone.

13        Defendant argues that the Complaint fails to allege "any facts that would lead to the

14   inference of $5,000 in harm."   Def.'s Mem. at 12.   Defendant is mistaken.   As explained above,

15   the Complaint alleges the value of the iPhone 7 Devices (between $649 and $849) and the severity

16   of the impairments to the devices, which plausibly make the devices valueless or sufficiently less

17   valuable that they need to be replaced.   Accordingly, aggregate damages to the class vastly exceed

18   the $5,000 threshold.   Even if damages could not be aggregated across the putative class (they

19   can), the value of the damage to the nine devices owned by the named Plaintiffs likewise would

20   exceed the $5,000 threshold.

21        **D.     For Plaintiffs' Trespass to Chattels Claim, the Complaint Adequately Pleads**

22        **that iOS 15 Caused Legally Cognizable Impairment**

23        Under California law, "[i]n order to prevail on a claim for trespass based on accessing a

24   computer system, the plaintiff must establish:   (1) defendant intentionally and without

25   authorization interfered with plaintiff's possessory interest in the computer system; and (2)

26   defendant's unauthorized use proximately resulted in damage." *eBay*, 100 F. Supp.2d at 1069–70;

27   *In re Apple Inc. Device Performance Litig.*, 347 F. Supp. 3d at 455.   A plaintiff may allege damage

28   by alleging that the trespass "impaired the condition, quality, or value of the personal property."

*Fields v. Wise Media, LLC*, No. C12–05160-WHA, 2013 WL 5340490, at *4 (N.D. Cal. Sept. 24, 2013).

The Complaint alleges that iPhone 7 users experienced "significant problems" after installing iOS 15, including "regular[] crashes," instances where the "screen goes blank," Compl. ¶ 21, "getting stuck . . . and requiring a reboot," loss of battery performance "require[ing] a recharge every few hours, Compl. ¶ 22, and overall "substantial slowdowns" in basic operations, including timed slowdowns ranging from 114% to 29%, Compl. ¶¶ 62-63.  Numerous courts have found that damages of exactly this sort amply satisfy the requirement of impairment for the purposes of a trespass claim.  *See In re Apple Inc. Device Performance Litig*., 347 F. Supp. 3d at 455 (plaintiffs' allegations that "the iOS updates impaired the functioning of their iPhones by substantially slowing their processing speed (by as much as 50%)" sufficient to state claim of trespass); *San Miguel v. HP Inc*., 317 F. Supp. 3d 1075, 1088 (N.D. Cal. 2018) (trespass claim stated where plaintiffs alleged that "HP's conduct caused damage by preventing the class printers from operating, impairing the condition of the printers, reducing the value of the printers, and depriving Plaintiffs of the use of the printers and of their non-HP ink cartridges for a substantial period of time"); *eBay*, 100 F. Supp. 2d at 1071 (allegations of "appropriating eBay's personal property by using valuable bandwidth and capacity, and necessarily compromising eBay's ability to use that capacity for its own purposes" adequate to state a claim for trespass); *In re Lenovo Adware Litig*., No. 15-MD-02624-RMW, 2016 WL 6277245, at *9 (N.D. Cal. Oct. 27, 2016) (finding trespass claim stated, and distinguishing *In re iPhone Application Litigation*, 844 F. Supp. 2d 1040 (N.D. Cal. 2021), where defendants "significantly degraded the performance of the Lenovo computers," such as by "slow[ing] internet upload speeds by as much as 55 percent" and causing webpages not to load).

Apple argues that some cases have found certain alleged impairment to be insufficient for the purposes of a trespass to chattels claim in California, but the only cases cited by Apple that concerned harms comparable to those at issue here found those harms to be sufficient, as detailed above.  Def.'s Mem. at 12-13 (citing *In re Apple Inc. Device Performance Litig*., 347 F. Supp. 3d at 454-55; *In re Lenovo*, 2016 WL 6277245, at *9 (N.D. Cal. Oct. 27, 2016)).  Defendant attempts

to argue that the "absolute effects" of the impairments were "more significant" in these cases than here, but Defendant cites no support for this claim and is in any event mistaken.  For example, the absolute effect of the installation of iOS 15 of "regular[] crashes," Compl. ¶ 21, is comparable to (indeed worse than) the absolute effect of the trespass at issue in *In re Lenovo* of not having webpages load, 2016 WL 6277245, at *9.  Moreover, Defendant fails to appreciate that slowing many processes in a computer by a fraction of a second causes a cumulative effect over time of increasing total processing wait time to an extent that is highly material to regular smartphone users.  Indeed, Apple itself admitted that speed differences of less than those at issue in this case are material to consumers when it advertised an increase in speed of 30% as a reason to purchase the iPhone 8 over the iPhone 7.  Compl. ¶ 76.

**E.**    **Plaintiffs' Trespass to Chattels Claim Is Not Barred by the Economic Loss Rule**

Apple also argues that Plaintiffs' trespass to chattels claim is barred by the economic loss rule.  Def.'s Mem. at 13-14.  The economic loss rule requires a purchaser to recover in contract, and not tort, for "purely economic loss due to disappointed expectations, unless [the purchaser] can demonstrate harm above and beyond a broken contractual promise." *Robinson Helicopter Co., Inc. v. Dana Corp.*, 34 Cal. 4th 979, 988, 102 P.3d 268, 272 (2004).

The economic loss rule has no application here because "Plaintiffs plead their trespass to chattels claim with its attendant damages separate and apart from any breach of contract."  *In re Apple Inc. Device Performance Litig.*, 347 F. Supp. 3d at 456.  This case in no way involves a contractual dispute.  Apple damaged Plaintiffs' iPhone 7 Devices by inducing them to download and install the free software iOS 15.  In downloading iOS 15, Plaintiffs did not enter into a contract with Apple.  The free, so-called "Software License Agreement" is in fact simply a notice to users limiting the rights granted under the license; it is not a contract, among other reasons, because Apple receives no consideration for users' downloading the free software.  *See, e.g.*, *Patriot Sci. Corp. v. Korodi*, 504 F. Supp. 2d 952, 960 (S.D. Cal. 2007) ("It is hornbook law that a contract, to be enforceable, must be supported by consideration.").  Moreover, users who purchased their iPhone 7 Devices directly from Apple were not damaged by a breach of that purchase agreement

16

or the malfunctioning of the Device they purchased—their Devices were only damaged when Apple separately and subsequently induced them to install iOS 15 for free.  Compl. ¶¶ 78-85.

Here again, Judge Davila addressed exactly this argument by Apple in *In re Apple Inc. Device Performance Litigation* and correctly found that the economic loss rule did not bar plaintiffs' trespass to chattels claim because the damage plaintiffs suffered from installing updates to their iPhones was "separate and apart from any breach of contract."  347 F. Supp. 3d at 456.

## V.   THE COMPLAINT ADEQUATELY PLEADS VIOLATIONS OF STATE CONSUMER PROTECTION LAWS

### A.   Defendant Violated State Consumer Protection Laws by Omitting To Inform Consumers that Installation of iOS 15 Would Damage iPhone 7 Devices

Apple violated state consumer protection laws of California (Cal. Bus. & Prof. Code §§ 17200, 17500, *et seq.*; Cal. Penal Code § 502) New York (N.Y. Gen. Bus. Law §§ 349, 350, *et seq.*), North Carolina (N.C. Gen. Stat. Ann. §§ 75-1.1, *et seq.*), and Virginia (Va. Code Ann. §§ 59.1-196, *et seq.*), by failing to disclose to iPhone 7 users that the installation of iOS 15 would permanently impair their devices.[3]  These statutes each contain several elements, but Apple argues only that two of the elements of these laws have been pleaded inadequately:  (1) that Plaintiffs relied on the omissions, and (2) that Defendant had a duty to disclose that iOS 15 would permanently impair Plaintiffs' iPhone 7 Devices.  Defendant also argues that the Software License Agreement disclosed this omitted information.  The Complaint adequately pleads Plaintiffs' reliance and Apple's duty to disclose, and the Software License Agreement not only failed to disclose that iOS 15 would permanently impair Plaintiffs' iPhone 7 Devices, but also affirmatively misrepresented that Apple had no reason to believe such impairment would occur.[4]

#### 1.   The Complaint Adequately Pleads Reliance

---

[3] Plaintiffs no longer intend to pursue Count VIII, or any claim under Louisiana Unfair Trade Practices and Consumer Protection Law, La. Rev. Stat. An. §§  51:1401, *et seq.*

[4] Defendant argues that Rule 9(b) applies to Plaintiffs' claims for violations of state consumer protection laws (though not Plaintiffs' Computer-Intrusion Claims).  Def.'s Mem. at 14-15.  Rule 9(b) requires merely that fraud allegations "be specific enough to give defendants notice of the particular misconduct . . . ." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (citation omitted).  Knowledge and state of mind still "may be alleged generally."  Fed. R. Civ. P. 9(b).  The detailed allegations of the Complaint readily satisfy this standard.

1    Under California law, "an essential element for a fraudulent omission claim is actual

2  reliance." *Daniel v. Ford Motor Co*., 806 F.3d 1217, 1225 (9th Cir. 2015).  State laws of New

3  York (N.Y. Gen. Bus. Law §§ 349, 350, *et seq.*), North Carolina (N.C. Gen. Stat. Ann. §§ 75-1.1,

4  *et seq.*), and Virginia (Va. Code Ann. §§ 59.1-196, *et seq.*), contain a similar element.  To prove

5  reliance on an omission, a plaintiff must show that the nondisclosure was a "substantial factor" in

6  the plaintiff's injury-producing conduct, which can be shown by proving that "had the omitted

7  information been disclosed, one would have been aware of it and behaved differently." *Daniel*,

8  806 F.3d at 1225 (citation omitted).  In turn, the showing that "one would have behaved differently

9  can be presumed, or at least inferred, when the omission is material." *Id.*  "An omission is material

10  if a reasonable consumer would attach importance to its existence or nonexistence in determining

11  his choice of action in the transaction in question." *Id*. (citation and internal quotation marks

12  omitted). "[M]ateriality is generally a question of fact [for the jury] unless the 'fact misrepresented

13  is so obviously unimportant that the jury could not reasonably find that a reasonable man would

14  have been influenced by it.'" *In re Tobacco II Cases*, 46 Cal. 4th 298, 327, 207 P.3d 20, 39 (2009)

15  (citation omitted).

16    The Complaint alleges facts from which one may readily infer that all iPhone 7 users would

17  have seen the omitted information—Apple omitted this information from the notifications and

18  Software License Agreements *all users must view* before installing iOS 15.  Compl. ¶¶ 51-57.  The

19  Complaint likewise alleges ample facts supporting the inference that reasonable iPhone 7

20  consumers would care about Apple's failure to inform them that installing iOS 15 would

21  permanently damage their devices.  As explained above, *supra* Part IV(A), the installation of iOS

22  15 permanently and substantially damaged their expensive devices.

23    Defendant argues that the Complaint does not allege that Plaintiffs would have seen a

24  disclosure from Apple of the omitted information.  Def.'s Mem. at 19.  In fact, as explained

25  immediately above, the Complaint alleges that Apple omitted this information from the

26  notifications and Software License Agreements *all users must view* before installing iOS 15.[5]

27  _____

28  [5] Apple also argues that the Complaint fails to allege "facts to support the conclusion that each of
them would have chosen to forgo security updates and new features had they seen it." Def.'s Mem.

Compl. ¶¶ 51-57.  Apple argues that this case is indistinguishable from *Tabak*, where the court held that the complaint there, "lack[ed] any nonconclusory allegations to support the notion that . . . a reasonable consumer would have attached [] importance to disclosures or nondisclosures by Apple about the defect."  Def.'s Mem. at 18 (citing *Tabak v. Apple, Inc*., No. 19-CV-02455-JST, 2020 WL 9066153, at *9 (N.D. Cal. Jan. 30, 2020)).  Yet the Complaint in this case alleges exactly what was missing in *Tabak*.  As explained above, the Complaint alleges ample, nonconclusory facts supporting the notion that reasonable consumers cared that iOS would permanently impair their devices, including allegations that iOS 15 caused performance degradation in iPhone 7 Devices comparable to the performance *enhancements* Apple itself had touted as the primary reason to purchase the device.  Compl. ¶¶ 33-35, 49-57.

### 2. The Complaint Adequately Pleads Duty To Disclose

Plaintiffs' state law claims based on Apple's fraudulent omissions require that Plaintiffs plead that Apple had a duty to disclose that installation of iOS 15 would cause damage to iPhone 7 Devices.  *See Hitachi Credit Am. Corp. v. Signet Bank*, 166 F.3d 614, 629 (4th Cir. 1999) (duty to disclose for fraudulent omissions claim under Virginia CPA); *Hodsdon v. Mars, Inc.*, 162 F. Supp. 3d 1016, 1026 (N.D. Cal. 2016) (same for UCL), *aff'd*, 891 F.3d 857 (9th Cir. 2018); *Dana v. Hershey Co.*, 180 F. Supp. 3d 652, 669 (N.D. Cal. 2016) (same for FAL); *City of High Point v. Suez Treatment Sols., Inc.*, 485 F. Supp. 3d 608, 635 (M.D.N.C. 2020) (same for North Carolina claim); *Gold v. Lumber Liquidators, Inc.*, No. 14–cv–05373, 2015 WL 7888906, at *11 (N.D. Cal. Nov. 30, 2015) (same for GBL).  To plead a duty to disclose under California law, a plaintiff may allege *any one* of the following:  "(1) [that] the defendant is the plaintiff's fiduciary; (2) [that] the defendant has exclusive knowledge of material facts not known or reasonably accessible to the plaintiff; (3) [that] the defendant actively conceals a material fact from the plaintiff; [or] (4) [that] the defendant makes partial representations that are misleading because some other material fact has not been disclosed."  *Hodsdon v. Mars, Inc*., 891 F.3d 857, 862 (9th Cir. 2018) (quoting *Collins*

---

at 19.  Apple's argument is meritless.  The Complaint details the myriad problems each Plaintiff experienced and expressly alleges that had Plaintiffs known that iOS 15 would cause such problems on their iPhone 7 Devices, they would not have installed it.  Compl. ¶¶ 123-24.  It is unclear what further allegations could satisfy Defendant.

1    *v. eMachines, Inc.*, 202 Cal. App. 4th 249, 255 (3d Dist. 2011)*, as modified* (Dec. 28, 2011)) (the

2    "*LiMandri* factors").

3           Here, the Complaint pleads the second, third and fourth *LiMandri* factors, each of which is

4    independently sufficient to plead a duty to disclose.   *First*, Apple had "exclusive knowledge of

5    material facts not known or reasonably accessible to the plaintiff" because it had exclusive

6    knowledge of the results of its extensive testing of iOS 15 on iPhone 7 Devices, which showed

7    that iOS 15 severely impaired the Devices.   Compl. ¶¶ 20, 106.   Apple's knowledge was

8    "exclusive" even if Plaintiffs may have had access to public complaints about iOS 15.   *See Falk v.*

9    *Gen. Motors Corp*., 496 F. Supp. 2d 1088, 1097 (N.D. Cal. 2007) (holding that the complaint

10   pleaded exclusive access where defendants "had access to pre-release testing data" showing the

11   product defects and even where "prospective purchasers, with access to the Internet, could have

12   read the many complaints about the failed [product]").

13          *Second*, the Complaint pleads that Apple "actively conceal[ed] a material fact from the

14   plaintiff[s]," namely, that installation of iOS 15 would permanently damage iPhone 7 Devices.

15   Compl. ¶¶ 90, 120, 183.   As explained above, *supra* Part IV(A)-(B), Apple knew that iOS 15 would

16   cause this damage, yet Apple actively withheld this information from consumers by refusing to

17   inform them in any of Apple's frequent communications with its customers.   Compl. ¶¶ 42-57, 78,

18   80, 83, 85, 90.   Such intentional withholding of known information constitutes active concealment.

19   *See Falk*, 496 F. Supp. 2d at 1097 (failure to make "any attempt to notify other customers or effect

20   a recall" of known defect sufficient to allege active concealment).

21          *Third*, Apple made "partial representations that [we]re misleading because some other

22   material fact ha[d] not been disclosed.   For example, Apple stated, that iOS 15 provided "powerful

23   new features that enhance how you use iPhone."   Compl. ¶ 33.   This statement was only a half-

24   truth—the new features in iOS 15 did not unqualifiedly "enhance" how iPhone 7 users used their

25   iPhones because iOS 15 significantly degraded the performance of iPhone 7 Devices.   *See*

26   *Williams*, 2017 WL 10186313, at *3 (statement that iOS 9 would "enhance performance" was

27   materially misleading where installation on older devices slowed performance).   Similarly, Apple

28   stated a half-truth when it told its customers that iOS 15 was "compatible" with iPhone 7

1   Devices—in fact, iOS 15, significantly and permanently damaged these Devices.  Finally, as

2   explained further below, Apple's Software License Agreement, which every end user that installed

3   iOS 15 was required to review before installing the software, likewise affirmatively misled iPhone

4   7 users—the SLA implied that Apple had no reason to believe that iOS 15 would negatively affect

5   the usability of iPhone 7.

### 3.   Apple's Software License Was Affirmatively Misleading

7          Defendant argues that Plaintiffs' claims based on Apple's fraudulent omissions must be

8   dismissed because, according to Defendant, Apple warned of the risks Plaintiffs' claim Apple

9   omitted in the SLA.  Def.'s Mem. at 8-9, 20.  In fact, under established Ninth Circuit precedent, a

10  defendant "make[s] a materially misleading statement when it 'speaks entirely of as-yet-unrealized

11  risks' when the risks have 'already come to fruition.'"  *In re Facebook, Inc. Sec. Litig.*, 84 F.4th

12  844 at 860 (quoting *Berson*, 527 F.3d at 987 (9th Cir. 2008)); *see In re Alphabet, Inc.*, 1 F.4th at

13  702-05.  Here, when Apple stated in the SLA that installation of iOS 15 "may affect the . . .

14  usability of . . . Apple products," Def.'s Mem. at 15, Apple stated as a mere possibility a result

15  Apple knew from testing would in fact occur, and so affirmatively misled Plaintiffs.  In any event,

16  as noted above, *supra* Part IV(A), the statement that iOS 15 may "affect" the usability of software

17  applications did not indicate that any such potential effect would be harmful, and the statement

18  that Apple did not warrant that iOS 15 would be error-free did not put Plaintiffs on notice that

19  installation of iOS 15 would in fact impair iPhone 7.

### B.   Defendant Violated California's UCL and FAL

21         California's UCL provides a cause of action for business practices that are (1) unlawful,

22  (2) unfair, or (3) fraudulent.  Cal. Bus. & Prof. Code § 17200.  The UCL's coverage is

23  "'sweeping,'" and its standard for wrongful business conduct "intentionally broad."  *In re First*

24  *All. Mortg. Co.*, 471 F.3d 977, 995 (9th Cir. 2006) (quoting *Cel-Tech Commc'ns., Inc. v. L.A.*

25  *Cellular Tel. Co*., 20 Cal. 4th 163, 973 P.2d 527 (1999)).  California's FAL "is equally

26  comprehensive within the narrower field of false and misleading advertising."  *Kwikset Corp. v.*

27  *Superior Court*, 51 Cal. 4th 310, 320, 246 P.3d 877, 884 (2011); Cal. Bus. & Prof. Code, § 17500,

28  *et seq.*  Apple doubly violated the UCL by violating both its "unlawful" and "fraudulent" prongs,

1    either one of which is independently sufficient for a UCL violation.  Apple likewise violated the

2    FAL through its misleading omissions.

3         **1.    Defendant Violated the UCL by Violating the "Unlawful" Prong**

4         The "unlawful" prong of the UCL "borrows violations of other laws and treats them as

5    unlawful practices," which the UCL then "makes independently actionable.'  *Cel-Tech Commc'ns*,

6    20 Cal. 4th at 180, 973 P.2d at 540 (citation omitted); *Cappello v. Walmart Inc.*, 394 F. Supp. 3d

7    1015, 1023 (N.D. Cal. 2019).  Apple violated the "unlawful" prong of the UCL by violating the

8    CFAA and the CCAFA, as explained above, *supra* Part IV(A)-(B).  *See, e.g.*, *In re Apple Inc.*

9    *Device Performance Litig.*, 347 F. Supp. 3d at 463  (violation of CFAA and CCAFA each sufficient

10   to support violation of UCL).  Accordingly, Apple's only argument that it has not violated the

11   "unlawful" prong of the UCL fails.  Def.'s Mem. at 21.

12        **2.    Defendant Violated the UCL by Violating the "Fraudulent" Prong**

13        Apple violated the "fraudulent" prong of the UCL by fraudulently omitting from Apple's

14   notices to Plaintiffs accompanying their installation of iOS 15 that the installation would

15   permanently damage their iPhone 7 Devices.  *See McKell v. Wash. Mut., Inc.*, 142 Cal. App. 4th

16   1457, 1471 (2d Dist. 2006) ("A fraudulent business practice is one which is likely to deceive the

17   public.  [. . .]  A perfectly true statement couched in such a manner that it is likely to mislead or

18   deceive the consumer, such as by failure to disclose other relevant information, is actionable under

19   the UCL.") (internal citations and quotation marks omitted).  Whether an omission is fraudulent is

20   a question of fact, and the bar is modest.  *See California v. Toomey*, 157 Cal. App. 3d 1, 16 (1st

21   Dist. 1984) ("What constitutes . . . [an] unfair or fraudulent business practice under any given set

22   of circumstances is a question of fact.") (citation and internal quotation marks omitted); *Friedman*

23   *v. AARP, Inc.*, 855 F. 3d 1047, 1055 (9th Cir. 2017) (reversing Rule 12(b)(6) dismissal of UCL

24   claim, finding plaintiff adequately alleged defendants violated the "fraudulent" and "unfair"

25   prongs of the UCL, and that to state a claim under either prong, a plaintiff's "burden of proof is

26   modest") (citation omitted).  Apple argues that the Complaint fails adequately to plead a fraudulent

27   omission, but as explained above, *supra* Part IV(A)(1)-(3), Apple is mistaken.

28

1   Apple also argues that Plaintiffs lack statutory standing to bring claims under the UCL

2 because, according to Apple, Plaintiffs have not adequately pleaded that (1) they relied on Apple's

3 omissions, and (2) that Plaintiffs suffered economic injury as a result of relying on Apple's

4 misrepresentations. Apple is wrong on both accounts. *First*, as explained above, *supra* Part

5 V(A)(1), Plaintiffs adequately plead that they actually relied on Apple's omission by pleading facts

6 supporting the inference that "had the omitted information been disclosed, one would have been

7 aware of it and behaved differently." *See Daniel*, 806 F.3d at 1225 (citation omitted). *Second*, as

8 detailed above, *supra* Part IV(B)-(C), Plaintiffs suffered significant economic damages from the

9 installation of iOS 15 on their iPhone 7 Devices: the Complaint plausibly pleads that the putative

10 class suffered many millions of dollars of economic damage, and adequately pleads that even

11 named plaintiffs alone suffered more than $5,000 in economic harm. Unlike the allegations in

12 cases cited by Apple, the allegations here are not "unsupported by any facts"—the Complaint

13 details the costs of the devices, the replacement cost, and the actual permanent performance

14 impairments that installation of iOS 15 caused to iPhone 7 Devices. *See In re Apple Inc. Device*

15 *Performance Litig*., 347 F. Supp. 3d at 455; *cf. Cahen v. Toyota Motor Corp*., 717 F. App'x 720,

16 723 (9th Cir. 2017) (unpublished) (cited by Apple) (allegations of damage from hacking were

17 conclusory and speculative where such hacking had ever actually occurred).

18      **3.**  **Defendant Violated the FAL**

19   Apple violated the FAL by misleadingly failing to inform iPhone 7 customers in its notices

20 accompanying their installation of iOS 15 that the installation would permanently damage their

21 iPhone 7 Devices. Compl. ¶¶ 119-27; Cal. Bus. & Prof. Code, § 17500, *et seq.* Apple argues only

22 that Plaintiffs lack statutory standing to bring their FAL claim for the same reasons that Apple

23 argues Plaintiffs lack such standing to bring their UCL claim. For the reasons stated above in

24 support of Plaintiffs' UCL claim, *supra* Part V(B)(1)-(2), Plaintiffs have statutory standing to bring

25 FAL claims.

26      **4.**  **The Court May Award Injunctive Relief under the UCL and FAL**

27   Separate from, and in addition to, monetary damages, Plaintiffs seek equitable relief,

28 including an injunction against Apple. The UCL and FAL both permit equitable remedies,

1   including injunctive relief.  *See McGill v. Citibank, N.A.*, 2 Cal. 5th 945, 961, 393 P.3d 85, 93

2   (2017) ("[P]ublic injunctive relief [is] a remedy available to private plaintiffs under the UCL and

3   the false advertising law [FAL].")  In federal court, equitable relief is available, in addition to

4   monetary damages, where monetary damages are "inadequate or incomplete." *Sonner v. Premier*

5   *Nutrition Corp.*, 971 F.3d 834, 844 (9th Cir. 2020).  Plaintiffs adequately allege a likelihood of

6   future injury sufficient to pursue injunctive relief where they "face[] the similar injury of being

7   unable to rely on [the defendant's] representations of its product in deciding whether or not [to]

8   purchase the product in the future." *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 971-72 (9th

9   Cir. 2018); *see Balistreri v. McCormick & Co., Inc.*, No. 5:22-cv-00349-EJD, 2023 WL 5988600,

10  at *6 (N.D. Cal. Sept. 13, 2023) (injunctive relief appropriate where plaintiffs sought, in addition

11  to monetary damages, to enjoin company defendant from future misrepresentations and omissions

12  so that plaintiffs could make informed decisions about whether to purchase defendant's products);

13  *Brown v. Van's Int'l Foods, Inc.*, No. 22-cv-00001, 2022 WL 1471454, at *11 (N.D. Cal. May 10,

14  2022) (similar); *Elgindy v. AGA Serv. Co.*, No. 20-cv-06304-JST, 2021 WL 1176535, at *6 (N.D.

15  Cal. Mar. 29, 2021) (similar).

16      Plaintiffs seek an injunction under the UCL and FAL to prevent Apple's chronic

17  misconduct in tricking iPhone users to download software updates that impair their iPhone devices

18  to such an extent that they are motivated to buy new devices.  Compl. Part VII(F).  While Plaintiffs

19  seek monetary damages under various federal and state laws to compensate them and the putative

20  class for the damage Apple caused to their iPhones, monetary damages are inadequate to prevent

21  "the similar injury of being unable to rely on [the defendant's] representations of its product" for

22  future iOS updates.  *Davidson*, 889 F.3d at 967.

23      Apple argues that the Complaint fails to plead that monetary damages are inadequate, and

24  so cannot pursue claims for equitable relief under the UCL or FAL.  Def.'s Mem. at 20-21.  Apple

25  is mistaken.  The Complaint alleges that "[m]oney damages alone are inadequate," Compl. ¶ 110,

26  and alleges facts supporting this conclusion:  the Complaint alleges that Apple habitually misleads

27  iPhone users to download software updates that impair their iPhone devices, Compl. ¶ 78, and that

28  Apple has a powerful profit motive to continue this business practice, Compl. ¶ 36.  Defendant

cites to cases holding that monetary damages may be adequate in cases merely alleging a defective product, Def.'s Mem. at 21, but this case does not simply concern a defective product—it concerns intentional, chronic conduct by Apple to impair older iPhone devices to increase profits.[6]

## VI.    CONCLUSION

Defendant's Motion should be denied.

Dated:  November 28, 2023                    Respectfully submitted,

**POMERANTZ LLP**

*/s/ Austin Van*
Jeremy A. Lieberman (*pro hac vice*)
Austin P. Van (*pro hac vice*)
600 Third Avenue, 20th Floor
New York, NY 10016
Telephone: (212) 661-1100
Facsimile: (212) 661-8665
jalieberman@pomlaw.com
avan@pomlaw.com

Jennifer Pafiti (SBN 282790)
1100 Glendon Avenue, 15th Floor
Los Angeles, California 90024
Telephone: (310) 405-7190
Facsimile: (212) 661-8665
jpafiti@pomlaw.com

*Counsel for Plaintiffs*

---

[6] Defendant's motion should be denied, but should the Court grant Defendant's motion in whole or in part, Plaintiffs respectfully request leave to amend to correct any deficiencies with facts uncovered through additional investigation.

OPPOSITION TO DEFENDANT'S MOTION TO DISMISS (CASE NO. 5:23-CV-03882-PCP)