UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FERN MARGOLIS, et al.,<br><br>　　　　Plaintiffs,<br><br>　　v.<br><br>APPLE INC.,<br><br>　　　　Defendant. | Case No.  5:23-cv-03882-PCP<br><br>**ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS**<br><br>Re: Dkt. No. 55 |

Plaintiffs bring this putative class action against Apple Inc. for allegedly misleading iPhone 7 users about the performance degradations that their devices would suffer as a result of downloading iOS 15 software. Apple moves to dismiss for failure to state a claim pursuant to Rule 12(b)(6). For the following reasons, the Court grants Apple's motion to dismiss plaintiffs' claims under the federal Computer Fraud and Abuse Act, California's Unfair Competition Law, California's False and Misleading Advertising Law, and Virginia's Consumer Protection Act, as well as plaintiff Elizabeth Guidice's claims under New York's consumer protection statute. It denies the motion to dismiss plaintiffs' remaining state consumer protection claims.

**BACKGROUND**

The plaintiffs are California, New York, Virginia, Louisiana, and North Carolina residents and owners of Apple iPhone 7 devices that suffered from performance degradations after plaintiffs downloaded Apple's iOS 15 software on the devices.[1] The plaintiffs seek to certify a class of all purchasers, owners, users, or lessees of any iPhone 7 device in the United States that was updated to any version of iOS 15, as well as California, New York, North Carolina, and Virginia

---

[1] For purposes of a Rule 12(b)(6) motion, the Court assumes the truth of the allegations in the amended complaint.

subclasses.

Apple is one of the world's largest developers and sellers of mobile phones and other consumer electronic devices. Apple first released the iPhone in 2007 and has typically released a new model of the phone each year since. Apple's iOS software is its proprietary mobile operating system for the iPhone. Apple generally releases a new major iOS version each year alongside its release of a new iPhone model and designates that iOS version with a number. Apple releases periodic updates to an iOS version following its initial release. Apple provides those updates to customers for free and advertises that old iPhones will be able to run on new iOS versions, which will add security enhancements and improve their devices. Once the software update is installed, Apple informs customers that it cannot be downgraded to the previous iOS version.

In September 2016, Apple began selling the iPhone 7 and iPhone 7 Plus (collectively, "iPhone 7 devices"). These devices use Apple's A10 Fusion chip to support their processing power and were the last of Apple's iPhone models to use that chip. The first iOS version that operated on the iPhone 7 devices was iOS 10. Apple released iOS 15 in 2021 alongside the iPhone 13 and made iOS 15 available for the iPhone 7 devices.

Apple heavily markets the release of each new iOS version. It encouraged iPhone users to download iOS 15 by emphasizing its features and improvements, security content, updates, and fixes. Apple communicated to customers that each version of iOS improved the performance of prior versions. Plaintiffs contend that Apple's fervent promotion of iOS 15, and its warnings that the new version provided important security updates, did not provide customers with any meaningful choice about whether to install iOS 15. Apple did not reveal that iOS 15 would make iPhone 7 devices perform worse than they did when using prior versions of iOS.

The plaintiffs allege that iOS 15 degraded the performance of their iPhone 7 devices in several ways, including by causing slowed performance across applications and functions, lags, glitches, freezes, sudden reboots, and poor battery health. They contend that the impact of iOS 15 on iPhone 7 devices was particularly acute because iOS 15 catered to the iPhone 8 and later models that had more powerful bionic chips and greater memory capacity. They assert that Apple conducted extensive testing of iOS 15 prior to its release and was aware of the performance issues

it would cause to iPhone 7 devices but concealed those effects in order to profit from customers purchasing new devices due to the performance degradations. As a result of Apple's conduct, the plaintiffs allege that they and the putative class suffered significant harm, including "the decline in value of their devices as a result of iOS 15 being downloaded onto them, increased time and expense in dealing with device performance issues, the cost of replacing the battery in their devices and/or the devices themselves, and not receiving the benefit of the bargain when purchasing their iPhone 7 Devices."

Plaintiffs assert nine causes of action arising under federal and state law and seek damages as well as declaratory and injunctive relief. To establish Apple's liability, the plaintiffs invoke: (1) the federal Computer Fraud and Abuse Act, 18 U.S.C. § 1030, *et seq.*; (2) California's Comprehensive Computer Data Access and Fraud Act, Cal. Penal Code § 502, *et seq.*; (3) California's False and Misleading Advertising Law, Cal. Bus. & Prof. Code § 17500; (4) California common law trespass to chattels; (5) California's Unfair Competition Law (UCL), Cal. Bus. & Prof. Code § 17200, *et seq.*; (6) New York's General Business Law, N.Y. Gen. Bus. Law § 349, *et seq.*; (7) New York's General Business Law, N.Y. Gen. Bus. Law § 350, *et seq.*; (8) North Carolina's Unfair Trade Practices Act, N.C. Gen. Stat. Ann. § 75-1.1, *et seq.*; and (9) Virginia's Consumer Protection Act, Va. Code Ann. § 59.1-196, *et seq.*

On October 13, 2023, Apple moved to dismiss plaintiffs' claims. The Court granted that motion as to all claims except those invoking the California Comprehensive Computer Data Access and Fraud Act and California common law trespass to chattels. On August 27, 2024, plaintiffs filed an amended complaint. Apple now moves to dismiss that amended complaint for failure to state a claim pursuant to Rule 12(b)(6).

**LEGAL STANDARD**

Federal Rule of Civil Procedure 8(a)(2) requires a complaint to include a "short and plain statement of the claim showing that the pleader is entitled to relief." If the complaint fails to state a claim, the defendant may move for dismissal under Federal Rule of Civil Procedure 12(b)(6). Dismissal is required if the plaintiff fails to allege facts allowing the Court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662,

678 (2009). "Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008). To survive a Rule 12(b)(6) motion, a plaintiff need only plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

In considering a Rule 12(b)(6) motion, the Court must "accept all factual allegations in the complaint as true and construe the pleadings in the light most favorable" to the non-moving party. *Rowe v. Educ. Credit Mgmt. Corp.*, 559 F.3d 1028, 1029–30 (9th Cir. 2009). While legal conclusions "can provide the [complaint's] framework," the Court will not assume they are correct unless adequately "supported by factual allegations." *Iqbal*, 556 U.S. at 679. Courts do not "accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Secs. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (quoting *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001)).

Consumer protection claims that sound in fraud are subject to Federal Rule of Civil Procedure 9(b)'s heightened pleading requirements. *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1102–04 (9th Cir. 2003). Rule 9(b) requires that, "when fraud is alleged, a party must state with particularity the circumstances constituting fraud." *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009) (cleaned up). "Rule 9(b) demands that the circumstances constituting the alleged fraud be specific enough to give defendants notice of the particular misconduct ... so that they can defend against the charge and not just deny that they have done anything wrong." *Id.* (cleaned up). A plaintiff must allege the "who, what, when, where, and how" of each alleged misrepresentation. *Id.*

## ANALYSIS

### I.  Computer Fraud and Abuse Act (CFAA)

To state a claim under the relevant provision of the CFAA, a plaintiff must establish that the defendant "knowingly cause[d] the transmission of a program, information, code, or command, and as a result of such conduct, intentionally cause[d] damage without authorization, to a protected computer." 18 U.S.C. § 1030(a)(5)(A).

4

In its prior order, the Court held that plaintiffs failed to state a claim under the CFAA because they did not plausibly plead that Apple acted intentionally and they did not satisfy the CFAA's loss threshold. Apple contends that plaintiffs' amended complaint again fails to plead intent plausibly.[2]

The Court concluded in its prior order that, in order to allege that Apple acted intentionally, plaintiffs must plausibly plead that it was Apple's "conscious desire" to damage their iPhone 7 devices, not simply that Apple knew such damage might occur. *Margolis v. Apple Inc.*, 743 F. Supp. 3d 1124, 1133 (N.D. Cal. 2024). In applying that standard to plaintiffs' original complaint, the Court concluded that plaintiffs' allegations supported an inference that Apple acted with knowledge that iOS 15 could negatively impact iPhone 7 devices but did not support a plausible inference that Apple intentionally damaged plaintiffs' devices.

Plaintiffs contend that they have now pleaded intent because their amended complaint alleges knowledge combined with motive and prior intentional conduct. But while allegations of knowledge, motive, and prior intentional conduct can support an inference of intent in certain circumstances, plaintiffs do not plausibly plead motive or relevant prior intentional conduct here. As a result, the factual allegations in the amended complaint once again support an inference that Apple acted only with knowledge that iOS 15 might degrade the performance of iPhone 7 devices, not with a conscious desire to effect that degradation.

Regarding motive, the amended complaint attempts to fortify plaintiffs' theory that Apple wanted to damage plaintiffs' iPhone 7 devices in order to drive sales of newer, replacement iPhones and thus increase profits. Most notably, the amended complaint eliminates certain allegations in the prior complaint that appeared to undermine that theory and offers an explanation for why Apple made the iOS 15 update available for some older iPhone models but not others. According to the amended complaint:

> If Apple were to provide full software updates to its oldest iPhone models that contain hardware that is wholly incapable of running that

---

[2] Apple does not challenge plaintiffs' CFAA claim on the basis of the loss threshold but reserves its right to litigate that issue at a later stage.

5

> software, these updates would totally disable 100% of the iPhones on which it was installed. If Apple permitted software updates on very old iPhones, and so totally disabled all very old iPhones on which it was installed, Apple's scheme would be so obvious that it would draw more national attention that it currently does. Instead, Apple permits updates that on many iPhones will only materially impair their operation, rather than totally disabling them, and so encourages iPhone users to upgrade their impaired phones without generating news stories about how it completely disables old iPhones with updates.

The new theory that plaintiffs assert in the amended complaint, that Apple prevents some older iPhone models from downloading iOS updates in order to conceal its scheme from the public, directly addresses the contradiction the Court noted in its prior order between the limited availability of iOS updates for older iPhone models and the theory that profit motive drives Apple to degrade the performance of older iPhones through iOS updates. The problem is that plaintiffs have not pleaded any *facts* to support that theory, let alone facts sufficient to rebut the far more plausible explanation that Apple makes new versions of iOS available only to those older iPhones for which it believes the benefits of the new software will outweigh any drawbacks. While the Court must accept the factual allegations in the complaint as true, the Court is not required to accept conclusory statements. *See Iqbal*, 556 U.S. at 678. And that is all plaintiffs offer here. Plaintiffs cite *United States v. Grupe*, No. 17-CR-0090(1), 2018 WL 775358 (D. Minn. Feb. 8, 2018) for the proposition that courts may infer intent from motive, but in that case there was "ample evidence" of motive, not merely a theory unsupported by factual allegations. *Grupe*, 2018 WL 775358, at *4.

Likewise, although prior intentional conduct can support an inference of intent, the relationship between the prior intentional conduct that plaintiffs cite and the purported intent to damage plaintiffs' phones alleged here is far too attenuated to support such an inference. Plaintiffs allege that Apple previously intentionally slowed down iPhone 6 devices through iOS updates in order to "smooth out ... instantaneous peaks … to prevent the device from unexpectedly shutting down." The problem is that this prior act of "deliberately slowing the performance of certain iPhones without [the] knowledge or consent" of consumers was, by plaintiffs' own allegations,

undertaken to at least arguably *improve* the overall functionality of those devices by preventing them from "unexpectedly shutting down." This conduct does not support plaintiffs' theory that "Apple purposely slows down older devices in order to sell more iPhones." If anything, Apple's alleged prior intentional conduct undermines plaintiffs' theory of motive, because preventing older devices from malfunctioning would *disincentivize* users from purchasing replacement devices.

Because plaintiffs have not provided allegations of prior intentional conduct or motive sufficient to create a plausible inference that Apple sought to damage plaintiffs' phones in order to spur sales of newer phones, the amended complaint plausibly pleads that Apple acted only with knowledge rather than intent. Plaintiffs thus fail to state a claim under the CFAA and the motion to dismiss is granted as to that claim. The dismissal of this claim is with prejudice and without leave to amend.

## II.     State consumer protection statutes

Plaintiffs bring consumer protection claims under several different state statutes, all of which require a misleading statement or deceptive act, which includes fraudulent omissions. *See* Cal Bus. & Prof. Code §§ 17200, 17500 (prohibiting "fraudulent" acts or practices and "false or misleading statements"); N.Y. Gen. Bus. Law §§ 349, 350 (similar); N.C. Gen. Stat. Ann. § 75-1.1 (similar); Va. Code Ann. § 59.1-200 (similar). Because such claims sound in fraud, they are subject to the heightened pleading standards of Federal Rule of Civil Procedure Rule 9(b).

### A.     Reliance

In its prior order, the Court held that plaintiffs failed to plead reliance, a required element. *See Key v. Qualcomm Inc.*, No. 23-3354, 2025 WL 597604, at *7–8 (9th Cir. Feb. 25, 2025) (cleaned up) ("[A]ny plaintiff relying on a UCL fraud theory must demonstrate actual reliance on the allegedly deceptive or misleading statements, in accordance with well-settled principles regarding the element of reliance in ordinary fraud actions."); *In re Tobacco II Cases*, 46 Cal. 4th 298, 326 (2009) ("[R]eliance is the causal mechanism of fraud."). To plead reliance, plaintiffs must allege that a defendant's misrepresentation or nondisclosure "was an immediate cause of the plaintiff's injury-producing conduct." *Daniel v. Ford Motor Co.*, 806 F.3d 1217, 1225 (9th Cir. 2015); *see also In re Tobacco II Cases*, 46 Cal. 4th at 326. The original complaint failed to allege

7

facts regarding what statements by Apple each plaintiff looked at and considered in deciding to download iOS 15. In particular, plaintiffs did not allege that they received messages from Apple or that they were otherwise aware of any statements by Apple regarding iOS 15's purported improvements, security measures, or updates. Nor did they allege that they would not have downloaded iOS 15 had Apple specifically disclosed the harms that the software would cause to their iPhone 7 devices.

The amended complaint remedies those deficiencies for all but three plaintiffs. With the exception of Elizabeth Guidice, Earl McFarland, and Ferdinand Metz, plaintiffs now allege which specific statements they looked at and considered in deciding to download iOS 15.[3] Several plaintiffs allege that they saw Apple's "short summary" on their iPhone 7 device before installing iOS 15. Many plaintiffs saw pop-up prompts from Apple asking them to install the update. Two plaintiffs remember reading portions of the Software License Agreement. Each plaintiff alleges that they would not have installed iOS 15 on their iPhone 7 device had they known it would degrade the device's performance, and several allege they would pay money to uninstall iOS 15.

Apple argues that these allegations are insufficient because plaintiffs do not allege that they would have been aware of additional information had Apple provided it nor what difference such disclosures would have made. *See In re Meta Pixel Tax Filing Cases*, 724 F. Supp. 3d 987, 1015–16 (N.D. Cal. 2024) (quoting *Hoffman v. 162 N. Wolfe LLC*, 228 Cal. App. 4th 1178, 1193–94 (2014)) ("Reliance can be proved in a fraudulent omission case by establishing that had the omitted information been disclosed, the plaintiff would have been aware of it and behaved differently."). But the Court can reasonably infer from plaintiffs' allegations about the statements they considered that they would have seen additional information in those statements had Apple provided it. And plaintiffs consistently emphasize that had they "been clearly informed that iOS 15 would seriously impair [their phones] in these ways, [they] would not have downloaded iOS

---

[3] Guidice, McFarland, and Metz do not allege that they considered any specific statements from Apple. Although plaintiff Zev Lewinson does not name the statement he relied on in deciding to download iOS 15, his allegation that he downloaded iOS 15 because "[h]e felt that he had no choice" after being "hounded" by prompts on his iPhone 7 device is sufficiently specific to survive a 12(b)(6) motion.

8

15."

Apple also argues that the Software License Agreement, which all iPhone users who downloaded iOS 15 were required to review, "warned of the exact performance issues plaintiffs allege experiencing," such that any claim based on the alleged omission of that information from its disclosures must fail. The Software License Agreement informed plaintiffs that installation of iOS 15 "may affect the availability and usability of third party software, applications or third party services, as well as Apple products and services" and disclaimed any warranty that "the Apple Software will meet your requirements" or "that the operation of the Apple Software and Services will be uninterrupted or error-free." While a statement that expressly and unambiguously discloses the specific risks allegedly omitted may preclude a fraudulent omission claim, a broad, general disclaimer like Apple's is generally insufficient. This case is distinguishable from *Meyer v. Aabaco Small Bus., LLC*, No. 5:17-CV-02102-EJD, 2018 WL 306688 (N.D. Cal. Jan. 5, 2018), in which the plaintiffs maintained that they were "never informed that Defendants may terminate the Web Hosting services without notice or reason" but the Terms of Service expressly stated "The Company reserves the right at any time and from time to time to modify or discontinue, temporarily or permanently, the Services (or any part thereof) with or without notice" and "You agree that the Company shall not be liable to You or to any third party for any modification, suspension, or discontinuance of any Service." *Meyer*, 2018 WL 306688, at *2–3. Here, the disclaimer provided by Apple's Software License Agreement was far broader and more general than the terms of service at issue in *Meyer*, and thus cannot be said to have put plaintiffs on notice of the specific performance degradations that would result from their installation of iOS 15.

**B.     Duty to disclose**

Apple contends that plaintiffs fail to allege that Apple had a duty to disclose, which is required to state a claim for fraudulent omission under the state consumer protection statutes. That duty exists only where the defendant (1) is the plaintiff's fiduciary, (2) has exclusive knowledge of material facts not known to the plaintiff, (3) actively conceals a material fact from the plaintiff, or (4) makes misleading partial representations. *LiMandri v. Judkins*, 52 Cal. App. 4th 326, 336 (1997); *Hodsdon v. Mars, Inc.*, 891 F.3d 857, 862 (9th Cir. 2018).

9

1    Apple is correct that plaintiffs fail to plead a duty to disclose based on active concealment.
2    While plaintiffs assert that Apple "withheld … information from consumers," "refusing to inform
3    them" that installation of iOS 15 would permanently damage iPhone 7 devices, "mere
4    nondisclosure" is insufficient to allege active concealment. *Gray v. Toyota Motor Sales, U.S.A.*,
5    No. CV 08-1690 PSG JCX, 2012 WL 313703, at *9 (C.D. Cal. Jan. 23, 2012), *aff'd sub
6    nom. Gray v. Toyota Motor Sales, U.S.A., Inc.*, 554 F. App'x 608 (9th Cir. 2014). Concealment
7    requires "affirmative acts on the part of the defendant[] in hiding, concealing or covering up the
8    matters complained of." *Lingsch v. Savage*, 213 Cal. App. 2d 729, 734 (Ct. App. 1963). Plaintiffs
9    allege no such affirmative acts.

10   Plaintiffs also fail to plead a duty to disclose arising from misleading partial representations.
11   Apple purportedly stated that iOS 15 provided "powerful new features that enhance how you use
12   iPhone," was "compatible" with iPhone 7 devices, and was "recommended for all users." Plaintiffs
13   contend that the performance degradations that iOS 15 caused to iPhone 7 devices constituted a
14   material fact whose omission rendered Apple's laudatory statements about iOS 15 misleading. *See
15   Marsh v. Zaazoom Sols., LLC*, No. C-11-05226-YGR, 2012 WL 6522749, at *17 (N.D. Cal. Dec.
16   13, 2012) (cleaned up) (explaining that a fraudulent misrepresentation claim under the UCL "may
17   be based on representations to the public which are untrue, and also those which may be accurate
18   on some level, but will nonetheless tend to mislead or deceive …. A perfectly true statement couched
19   in such a manner that it is likely to mislead or deceive the consumer, such as by failure to disclose
20   other relevant information, is actionable under the UCL"). But to plead a duty to disclose under a
21   misleading partial representation theory, plaintiffs must allege that they relied on the misleading
22   partial representation. *Opperman v. Path, Inc.*, 84 F. Supp. 3d 962, 984 (N.D. Cal. 2015) ("A partial-
23   representation claim requires Plaintiffs to plead reliance on at least some misleading partial
24   representations."). Apple's purportedly misleading statements about iOS 15 were made by Apple's
25   Senior Vice President of Software Engineering at an online conference, in the iPhone User Guide,
26   on Apple's website, and in notifications that it sent to users providing the update. Only the latter
27   were allegedly viewed by plaintiffs, and the only allegedly misleading statement contained therein
28   was that iOS 15 was "recommended for all users." Plaintiffs do not allege that they relied on that

1    statement specifically, and even if they did that statement alone is insufficient to give rise to a duty

2    to disclose the harmful effects of iOS 15 on iPhone 7 devices.

3          Conversely, however, plaintiffs adequately plead that Apple had a duty to disclose based

4    on its exclusive knowledge of material facts not known to plaintiffs. Plaintiffs allege that Apple

5    had exclusive knowledge of the results of its extensive pre-launch testing that showed that iOS 15

6    severely impaired iPhone 7 devices. Apple contends that its knowledge was not exclusive because

7    the alleged impairments were covered in the press, including in articles on which plaintiffs rely in

8    their amended complaint. That argument fails for two reasons. First, even if Apple's knowledge

9    that iOS 15 impaired iPhone 7 devices was eventually shared with others, plaintiffs allege that its

10   knowledge of the pre-launch testing results revealing those defects was exclusive. Second,

11   plaintiffs' ability to access reporting about performance issues caused by iOS 15 does not mean

12   that Apple's knowledge was necessarily insufficiently exclusive to give rise to a duty to disclose.

13   *See, e.g.*, *Falk v. Gen. Motors Corp.*, 496 F. Supp. 2d 1088, 1096–97 (N.D. Cal. 2007) (holding

14   that the complaint pleaded exclusive knowledge even though prospective purchasers "with access

15   to the internet [] could have read the many complaints" about the product because only the

16   defendant had access to pre-release testing data and the defendant "is alleged to have *known* a lot

17   more about the defective" product). Plaintiffs' allegation that Apple knew significantly more about

18   the defects iOS 15 caused for iPhone 7 devices given its exclusive access to pre-launch testing

19   data is sufficient to plead exclusive knowledge. Plaintiffs thus plead Apple had a duty to disclose.

20         Because plaintiffs Guidice, McFarland, and Metz fail to plead reliance and therefore fail to

21   state a claim under the relevant consumer protection statutes, Apple's motion to dismiss is granted

22   as to those plaintiffs' state consumer protection claims. Because McFarland is the only Virginia

23   plaintiff, the motion to dismiss is granted as to all claims under Virginia's Consumer Protection

24   Act. The dismissal of these claims is with prejudice and without leave to amend. Conversely, the

25   remaining plaintiffs plausibly allege reliance and a duty to disclose. Apple's challenge to their

26   state consumer protection claims for failure to plead those elements fails.[4]

---

[4] The Court considers Apple's additional challenges to the California and New York claims below.

11

### C. California's Unfair Competition Law (UCL) and False and Misleading Advertising Law (FAL)

Apple asserts that plaintiffs' California consumer protection claims fail because the Court lacks equitable jurisdiction over them and plaintiffs lack standing.

In its prior order, the Court found that the original complaint failed to plead claims under the UCL and FAL because plaintiffs failed to plead that damages or other legal remedies were inadequate to remedy the harms that they allegedly suffered. "Under *Sonner*, Plaintiffs are required to allege that they lack an adequate remedy at law in order to seek injunctive relief." *In re MacBook Keyboard Litig.*, No. 5:18-CV-02813-EJD, 2020 WL 6047253, at *3 (N.D. Cal. Oct. 13, 2020); *see also Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 844 (9th Cir. 2020) ("[Plaintiff] must establish that she lacks an adequate remedy at law before securing equitable restitution for past harm under the UCL"). In their amended complaint, plaintiffs seek injunctive relief, alleging that "[m]onetary damages and other legal remedies are inadequate to address Apple's wrongful practices" because legal remedies "would not end Apple's wrongful conduct."

Where an injunction is necessary to prevent future wrongdoing, legal remedies may be inadequate. *See Brooks v. Thomson Reuters Corp.*, No. 21-CV-01418-EMC, 2021 WL 3621837, *11 (N.D. Cal. Aug. 16, 2021) ("[T]he prospect of paying damages is sometimes insufficient to deter a defendant from engaging in an alleged unlawful, unfair, or fraudulent business practice."); *Zeiger v. WellPet LLC*, 526 F. Supp. 3d 652, 687 (N.D. Cal. 2021) ("[M]onetary damages for past harm are an inadequate remedy for the future harm that an injunction under California consumer protection law is aimed at. [Plaintiff's] remedy at law, damages, is retrospective. An injunction is prospective."); *McGill v. Citibank, N.A.*, 2 Cal. 5th 945, 955 (2017) (explaining that injunctive relief under the UCL and FAL are designed to prevent future harm and retrospective damages are not an adequate remedy for that prospective harm). But plaintiffs have not established that they have Article III standing to pursue such claims for injunctive relief, which requires that they face "a concrete and particularized legal harm … coupled with a sufficient likelihood that [they] will again be wronged in a similar way." *Bates v. United Parcel Service, Inc.*, 511 F.3d 974, 985 (9th Cir. 2007) (cleaned up).

Plaintiffs contend that they face "a real and immediate threat of repeated injury," *id.*

12

1  (cleaned up), because they are unable to rely on Apple's representations about future iOS updates
2  and will be forced to question whether future updates will improve or significantly degrade the
3  performance of their devices. While previously deceived plaintiffs may have standing to pursue
4  injunctive relief where their future use of a product depends on a defendant's representations about
5  that product but they are unable to rely on those representations, *see, e.g.*, *Davidson v. Kimberly-
6  Clark Corp.*, 889 F.3d 956, 970 & n.5 (9th Cir. 2018), plaintiffs here do not plead facts suggesting
7  that they will need to rely on Apple's representations about new iOS updates in the future. In
8  particular, they do not plead any facts suggesting that they will download future iOS updates.
9  Some plaintiffs still own their iPhone 7 devices, which are at no risk of further performance
10 degradation from future iOS updates because iOS 15 was the latest version that could be
11 downloaded to an iPhone 7. Some plaintiffs have replaced their iPhone 7 devices with new
12 phones, but plaintiffs do not allege that the new phones are iPhones. None of the plaintiffs alleges
13 that they intend to purchase an iPhone in the future, and some, in fact, allege that they cannot
14 afford to do so. Thus, none of the plaintiffs alleges that they currently or will soon have an iPhone
15 susceptible to possible future harm from iOS software updates.

16    Because plaintiffs fail to plead that they face a real threat of a similar injury in the future,
17 they fail to plead facts establishing their standing to pursue injunctive relief and the Court lacks
18 equitable jurisdiction over their UCL and FAL claims as currently pleaded.[5] The motion to dismiss
19 is therefore granted as to the California consumer protection claims. Because plaintiffs may be
20 able to cure these deficiencies through amendment, this dismissal is without prejudice and with
21 leave to amend.

22    **D.    New York's false advertising law (GBL § 350)**
23    Apple contends that plaintiffs fail to plead a claim under GBL § 350 because they have not
24 identified any misleading "advertising" on which they relied. *See* N.Y. Gen. Bus. L. § 350 ("False
25 advertising … is hereby declared unlawful."). According to Apple, the allegedly misleading
26 statements on which the New York plaintiffs claim to have relied were not advertising for the

---

[5] Apple asserts that plaintiffs' UCL and FAL claims fail for the additional reason that plaintiffs have not adequately pleaded reliance or economic injury. The Court need not reach those issues.

purposes of GBL § 350 because advertising does not include policies, terms of service, and other written materials not intended to promote a sale. The short iOS 15 summary page that Apple allegedly showed plaintiffs on their iPhone 7 devices before they downloaded the software, however, was effectively a label, which is incontrovertibly advertising under GBL § 350. *See* N.Y. Gen. Bus. L. § 350-a(1) ("The term 'false advertising' means advertising, including labeling."). Like a label, the iOS 15 summary page appeared on what was effectively the software's "package," and it simultaneously provided factual information about the update and, according to plaintiffs, "touted" the improvements it offered. Because iOS updates are free, the summary was not intended to induce a sale, but plaintiffs allege it was intended to induce action. New York plaintiffs Padilla, Lewinson, and Aranibar thus adequately plead that they relied on misleading advertising. Accordingly, the motion to dismiss is denied as to the New York consumer protection claims.

## CONCLUSION

For the foregoing reasons, the Court grants Apple's motion to dismiss plaintiffs' claims under the federal Computer Fraud and Abuse Act, California's Unfair Competition Law, California's False and Misleading Advertising Law, and Virginia's Consumer Protection Act, as well as plaintiff Elizabeth Guidice's claim under New York's consumer protection statute. The Court's dismissal of these claims is with prejudice and without leave to amend except as to the UCL and FAL claims, which are dismissed without prejudice and with leave to amend. The Court denies Apple's motion to dismiss the remaining plaintiffs' claims under the New York and North Carolina consumer protection statutes. Plaintiffs may file an amended complaint consistent with this Order within 21 days.

**IT IS SO ORDERED.**

Dated: April 3, 2025

P. Casey Pitts
United States District Judge